UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09045-SVW-GJS | Date | March 11, 2019 |
|---|---|---|---|
| Title | *Kimberly Haas v. Bellingham Properties, LLC et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

| **Proceedings:** | IN CHAMBERS ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [28] |
|---|---|

## I.    Introduction

On March 6, 2019, Plaintiff Kimberly Haas filed an ex parte application seeking a Temporary Restraining Order ("TRO"). Dkt. 28. Plaintiff seeks to enjoin Defendants Bellingham Properties, LLC, Bodi Property Management, and Benjamin Barko from taking any further steps to evict Plaintiff from her home until further ordered by this Court. Dkt. 28-4 at 2.

## II.    Legal Standard

A plaintiff seeking a preliminary injunction or a TRO must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiffs in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale" approach, a plaintiff may be entitled to a preliminary injunction if "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). However, "plaintiffs must also satisfy the other *Winter* factors," including the likelihood of irreparable harm. *Id.* at 1135.

Because injunctive relief is an "extraordinary remedy," it may only be awarded "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A TRO is "an extraordinary

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-09045-SVW-GJS | Date | March 11, 2019 |
| Title | *Kimberly Haas v. Bellingham Properties, LLC et al.* | | |

and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted). It is granted to serve the "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

### III.    Factual Allegations

Plaintiff's factual allegations are as follows. Plaintiff lives in an apartment building owned by Bellingham Properties and managed by Bodi Property Management. Dkt. 28 at 5. Barko is the managing member of Bellingham Properties and the principal of Bodi Property Management, and is responsible for managing the building. *Id.*

Plaintiff has lived in the building for twenty-eight years. *Id.* at 6. In 2014, Barko hired Plaintiff to be the on-site manager of the building and, as such, she was required to live at the building. *Id.* Plaintiff was required to devote between ten and twenty per week to work at the building, but was never paid for her work or reimbursed for personal supplies that she used for work. *Id.*

Plaintiff suffers from spondylolisthesis, spondylosis, and scoliosis. *Id.* Starting in 2014, her condition worsened and she began using a walker. *Id.* In December 2015, she underwent spinal fusion surgery. *Id.*

In December 2016, Plaintiff received an envelope with the return address handwritten as Bellingham Properties. *Id.*; Dkt. 28-1 at 3. Inside the envelope was a letter that made disparaging remarks based on Plaintiff's disability, such as: "You have won the cripple award! . . . here are some pictures of your family from notre dame (time to ring the bell perhaps as a new position?)." Dkt. 28 at 7. The letter also included a picture of the Hunchback of Notre Dame and other disparaging symbols and imagery relating to Plaintiff's disability. *Id.* at 7-8.

In January 2018, Barko fired Plaintiff. *Id.* at 8. On February 28, 2018, Plaintiff received notice that her rent would be increased to $1,350 per month. *Id.* On August 31, 2018, Plaintiff received notice that her rent would increase to $1,800 per month. *Id.* Plaintiff attempted to tender rent in the amount of $1,350 per month for December 2018 and January 2019, but those payments were refused by Defendants. *Id.* at 8-9. On October 19, 2018, Plaintiff filed the instant action. *Id.* at 9. On January 16, 2019, Bellingham Properties filed an unlawful detainer action in state court. *Id.* On February 25, 2019,

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09045-SVW-GJS | Date | March 11, 2019 |
|---|---|---|---|
| Title | *Kimberly Haas v. Bellingham Properties, LLC et al.* | | |

counsel for Plaintiff was notified that trial in the unlawful detainer action was set to commence on March 14, 2019.[1] *Id.*

## IV. Analysis

### A. Anti-Injunction Act

The Anti-Injunction Act, 28 U.S.C. § 2283, generally provides that a "court of the United States may not grant an injunction to stay proceedings in a State court." However, there are three exceptions to the general rule: (1) where the federal court is "expressly authorized by Act of Congress"; (2) "where necessary in aid of [the federal court's] jurisdiction"; and (3) where necessary "to protect or effectuate [the federal court's] judgments." *Id.*

---

[1] Defendants' opposition brief lays out additional facts, many of which are not inconsistent with Plaintiff's version of the facts. For example, the apartment building suffered a massive fire on February 13-14, 2013. Dkt. 30 at 6. All tenants, including Plaintiff, were forced to relocate while Bellingham Properties made repairs and upgrades to the building. *Id.* In an effort to quickly occupy the building after the repairs were completed, Barko told the former tenants, including Plaintiff, that Bellingham Properties would limit any rental increases for all tenants for one year if they moved back into the building. *Id.* at 6-7. When the repairs were finished in 2014, Plaintiff moved back into the building and continued paying rent at her below-market rate until 2017. *Id.* at 7.

In early 2017, Bellingham Properties decided that it needed to recoup the expenses it had incurred as a result of the fire, as well as to bring the rental rates closer in line with market rates and to equalize rates among its tenants. *Id.* In 2018, Bellingham Properties decided to make additional rental increases to bring the building closer to market rates. *Id.* Accordingly, in April 2018, Plaintiff and twenty other residents of the building received rental increases. *Id.* In November 2018, nearly every tenant in the building, including Plaintiff, received a rental increase. *Id.* After the rental increases in November 2018, the rental rates in the building ranged from $1,800 per month to $3,200 per month. *Id.* Of the twenty-five units in the building, only six tenants, including Plaintiff, paid $1,800 per month. *Id.* Occupants in units similar to Plaintiff's paid between $1,800 and $1,900 per month. *Id.* at 8. Because Plaintiff did not tender her rent of $1,800 for December 2018 or January 2019, Defendants initiated an unlawful detainer action against Plaintiff in state court. *Id.*

Defendants also deny that Plaintiff worked for Defendants. *Id.* They allege that during the relevant time period, Barko was the on-site property manager. *Id.* Defendants also allege that any payments from Barko to Plaintiff were made due to a romantic relationship between them, and not as compensation for any work on behalf of Defendants. Dkt. 30 at 6.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09045-SVW-GJS | Date | March 11, 2019 |
|---|---|---|---|
| Title | *Kimberly Haas v. Bellingham Properties, LLC et al.* | | |

Defendants argue that the Anti-Injunction Act prohibits this Court from enjoining the unlawful detainer action in state court because none of the three exceptions applies. By contrast, Plaintiff contends that the Anti-Injunction Act does not bar an injunction in this context, apparently relying on the "in aid of its jurisdiction" exception. Dkt. 28 at 10. The thrust of Plaintiff's argument is that other federal courts have enjoined state court proceedings in similar circumstances. *Id.* at 10-11.

However, Plaintiff's cases are inapposite and do not render persuasive Plaintiff's argument that the Court has jurisdiction to enjoin the state-court proceeding. First, in *Johnson v. Macy*, No. CV 15-7165 FMO (ASx), 2015 WL 9692930, at *5 (C.D. Cal. Oct. 25, 2013), no state-court proceedings had been initiated at the time the plaintiff moved for a TRO.[2]  This factual distinction is also present in *Jackmon v. Am.'s Servicing Co.*, No. C 11-03884 CRB, 2011 WL 3667478, at *3 (N.D. Cal. Aug. 22, 2011) and *Na'im v. Sophie's Arms Fine Residences, LLC*, No. 3:13-CV-02515-JAH-BLM, 2013 WL 8609251, at *1 (S.D. Cal. Nov. 18, 2013).

Second, Plaintiff cites *Logan v. U.S. Bank National Association* for the proposition that a "state unlawful detainer action does not implicate 'important state interests.'" 722 F.3d 1163, 1167 (9th Cir. 2013). Although this may be true, it is not relevant to the question of whether the Anti-Injunction Act bars a TRO. Rather, it is part of a separate and independent analysis, the *Younger* abstention doctrine, which requires a federal court to consider (among other things), before it may interfere with a state-court proceeding, whether the state-court proceeding implicates important state interests. *Id.* at 1166-67.

Third, Plaintiff cites *Tellock v. Davis* as a case in which a federal court enjoined a state-court proceeding after the proceeding had already been initiated. No. 02-CV-4311 (FB), 2002 WL 31433589, at *4 (E.D.N.Y. Oct. 31, 2001). However, in *Tellock*, the court specifically based its holding on the fact that, under New York case law, the plaintiff's federal claims could not be presented in the state-court proceedings. *Id.* at *4. That procedural wrinkle is not present in the instant case.

---

[2]   It is true, as Plaintiff notes, that the court in *Johnson* also states that it "would not necessarily be barred from granting injunctive relief . . . [e]ven if defendant had already initiated unlawful detainer proceedings in state court." *Johnson*, 2015 WL 9692930, at *5 n.3. However, this statement is not essential to the court's holding and is supported by general "principles," including the "necessary in aid of its jurisdiction" exception, without any explanation as to how a federal court's jurisdiction would be harmed by a state-court unlawful detainer action.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09045-SVW-GJS | Date | March 11, 2019 |
|---|---|---|---|
| Title | *Kimberly Haas v. Bellingham Properties, LLC et al.* | | |

    In sum, the Court is not satisfied that it has jurisdiction to enjoin the state-court proceedings. Specifically, it is not apparent at this stage why granting a TRO would be necessary to aid the Court's jurisdiction. *See Sierra v. City of New York*, 528 F. Supp. 2d 465, 468-69 (S.D.N.Y. 2008) (rejecting the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act where the plaintiff could raise her Fair Housing Act claim as an affirmative defense to the eviction proceeding); *Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987) (holding that the "necessary in aid of its jurisdiction" exception does not apply based on the "mere existence of a parallel action in state court," but instead requires a state court's interference "with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case").

    **B.**    *Winter* **Factors**

    Even if the Court had the authority to enjoin the state-court proceeding, a TRO is not warranted in these circumstances.

        *i.*    *Likelihood of Success on the Merits*

    Plaintiff has not made a clear showing of a likelihood that she will succeed on the merits. Plaintiff's only evidence to support her discrimination claims is the alleged communication from Defendants in December 2016. However, the only connection between the communication and Defendants is the handwritten return address.[3] Furthermore, even if a connection to Defendants were definitively established, the letter on its own may not be sufficient to state a claim for disability discrimination, which will require Plaintiff to show that she suffered an injury as a result of Defendants' discriminatory conduct. A period of over one year between, on the one hand, Defendants' alleged communication and, on the other hand, the termination of Plaintiff's employment and the rent increases, is likely too long to establish causation. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1036 (9th Cir. 2006) (holding that a seven-month delay between the plaintiff's complaints and his eventual termination was "too much time . . . for a reasonable jury to conclude that [the plaintiff]'s complaints caused [the defendant] to fire him"). Lastly, even if the Court concluded that Plaintiff could establish a prima facie case of disability discrimination, Defendants have put forward evidence that they had legitimate, non-discriminatory reasons for the increases to Plaintiff's rent in 2018.

---

[3]    Defendants strongly deny having written or sent the letter. Dkt. 30 at 12. The letter appears to be written by someone signing off as "TACA"; it is not signed by Defendants.

                                                                              :         

Initials of Preparer                     

                                                                                PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09045-SVW-GJS | Date | March 11, 2019 |
|---|---|---|---|
| Title | *Kimberly Haas v. Bellingham Properties, LLC et al.* | | |

      ii.     *Likelihood of Irreparable Harm*

    Plaintiff argues that irreparable harm is "presumed" in this context; that is, "[w]here, as here, a plaintiff faces eviction from her home, irreparable harm is shown by this fact alone." Dkt. 28 at 15. However, Plaintiff's cases generally do not support this conclusion. The only binding precedent that Plaintiff cites, *Park Village Apartment Tenants Association v. Mortimer Howard Trust*, 636 F.3d 1150, 1158-59 (9th Cir. 2010), is distinguishable because it involved a low-income housing statute that specifically "provide[d] Plaintiffs a 'right to remain' in their current units." Such a right is not alleged to be at stake in this case. Three[4] of the cases that Plaintiff cites involve real property being sold through foreclosure proceedings and wrongful foreclosure claims that were related to possible eviction. *See, e.g.*, *Jackmon*, 2011 WL 3667478, at *3 ("In granting the TRO, the Court held that Plaintiff would suffer irreparable harm if she is evicted from her house, *assuming, as alleged, that it was wrongfully foreclosed on* due to a breach of the agreement to modify the loan.") (emphasis added). Lastly, the court in *Na'im* held that a "showing of a substantial likelihood that a defendant has violated the federal Fair Housing Act is sufficient, by itself, to create a presumption of irreparable harm." 2013 WL 8609251, at *2. Even if this statement were true,[5] there has been no clear showing of a substantial likelihood of a Fair Housing Act violation.

    Plaintiff also argues that an injunction is proper where pecuniary compensation would not afford adequate relief or where it would be extremely difficult to ascertain the amount of compensation that would afford adequate relief. Dkt. 28 at 15. Plaintiff presumes that pecuniary relief is inadequate, citing California case law and statutory law. *Id.* However, it is not at all clear that pecuniary relief is inadequate in this case. Although the caption page of Plaintiff's First Amended Complaint ("FAC") states that it is a complaint "for damages and injunctive relief," nowhere in the FAC does Plaintiff seek injunctive relief. Instead, as laid out in her Prayer for Relief, as to each of her eight claims Plaintiff seeks

---

[4]     *Jackmon*, 2011 WL 3667478, at *3; *Wadhwa v. Aurora Loan Servs., LLC*, No. S-11-1784 KJM KJN, 2011 WL 2681483 (E.D. Cal. July 8, 2011); *Castillo v. Skoba*, No. 10cv1838 BTM, 2010 WL 3986953 (S.D. Cal. Oct. 8, 2010).

[5]     It may not be true. The court in *Na'im* relies on *Park Village*, which as discussed above was based on a specific statutory context, and another case, *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001), in which the court presumed, based on a jury's finding a prior violation, that future violations were likely to occur.

                                                                                                :

                                                                 Initials of Preparer

                                                                                        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09045-SVW-GJS | Date | March 11, 2019 |
|---|---|---|---|
| Title | *Kimberly Haas v. Bellingham Properties, LLC et al.* | | |

only pecuniary relief. Dkt. 17 at 14-15. In other words, Plaintiff makes no connection between alleged violations of specific rights and a need for an injunction to vindicate those rights. Thus, it is not clear how pecuniary compensation would not afford adequate relief in this case.

   *iii.* *Balance of Equities and Public Interest*

  These factors, although important, do not strongly weigh in favor of either party. As to the balance of equities, both parties can make strong arguments. For example, Plaintiff notes that if a TRO is not issued, then she will face the threat of eviction. By contrast, Defendants contend that a TRO would deprive them of their right to control their property and rental income. Because Plaintiff has an opportunity to defend herself in the unlawful detainer action, the balance of equities tips slightly in Defendants' favor.

  As to the public interest factor, although it may be true that Fair Housing Act claims generally serve an important public interest, they would only do so if they had merit. Here, because Plaintiff has not made a clear showing of a likelihood of success on the merits, granting a TRO cannot be said to advance the public interest.

**V.** **Conclusion**

  For the above reasons, the Court DENIES Plaintiff's ex parte application for a TRO.

  IT IS SO ORDERED.

                            :

                     Initials of Preparer PMC